In re **PENN–DIXIE INDUSTRIES, INC., Debtor.**

**NAMED PLAINTIFFS AND the CERTIFIED CLASSES THEY REPRESENT IN the CEMENT ANTITRUST LITIGATION, Plaintiffs,**

v.

**PENN–DIXIE INDUSTRIES, INC., Defendant.**

**Bankruptcy No. 80 B 10473. Adversary No. 80 5317A.**

United States Bankruptcy Court, S. D. New York.

Oct. 28, 1980.

---

Fried, Frank, Harris, Shriver & Jacobson, New York City, for debtor; Ilene Karpf, New York City, of counsel.

Law Offices of Josef D. Cooper, P.C., San Francisco, Cal., for plaintiffs; Josef D. Cooper and Tracy R. Kirkham, San Francisco, Cal., of counsel.

## MEMORANDUM OPINION

BURTON R. LIFLAND, Bankruptcy Judge.

Plaintiffs commenced this action in order to seek relief from the automatic stay of Section 362 of the Bankruptcy Code [1] to the limited extent of allowing discovery to go forward against the Debtor (production of documents ... customer lists) in antitrust litigation pending outside this Court. Plaintiffs do not seek to lift the stay for purposes of proceeding against this defendant in the antitrust litigation.

Penn–Dixie Industries, Inc. ("Penn–Dixie") was served between November, 1976 and December, 1979, as a party defendant in civil antitrust suits commenced in various United States district courts against producers of cement by a group of cement purchasers ("Plaintiffs"). Each complaint alleges violations of federal antitrust laws and some of the complaints also allege state antitrust law violations. Penn–Dixie's answers to the complaints deny any violation. For pre–trial purposes, the multi–district litigation has been consolidated in the United States District Court for the District of Arizona (*In re Cement & Concrete Antitrust Litigation*, 465 F.Supp. 1299 [Jud.Pan. Mult.Lit.1979]).

By an order dated March 9, 1979 (as clarified by orders of January 15 and 16, 1980), the Arizona District Court certified the litigation to proceed on behalf of three different classes of cement purchasers, all of whom purchased cement between Janu-

---

1. Title I of the Bankruptcy Reform Act of 1978, Pub.L. 95–958, 92 Stat. 2683, enacted and codified as Title 11 of the United States Code, the "Bankruptcy Code", and all section references herein may be found in Title 11, unless otherwise indicated.

ary 1, 1968 and December 31, 1976. Following certification, Plaintiffs served interrogatories and document requests concerning customer lists held by defendants. The purpose of the discovery was to aid Plaintiffs in preparing notice to putative plaintiffs in the certified classes. Penn–Dixie objected to the production of their customer lists on several grounds, but most particularly, because the request was burdensome and required disclosure of post December 31, 1976 customers.

On April 7, 1980, Penn–Dixie filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code and has continued in the operation of its business as debtor in possession. By a letter dated April 23, 1980, Penn–Dixie informed Plaintiffs through their lead counsel of its petition and noted therein that pursuant to Section 362 of the Bankruptcy Code, all actions pending against it were automatically stayed.

Several months later, on July 16, 1980, the Arizona District Court approved Plaintiffs' proposed manner of disseminating notice to class members in the antitrust suit (pre–trial Order No. 50). Plaintiffs' plan included sending notice of the antitrust litigation to each individual identified in customer lists obtained from defendants, supplemented by extensive national publication. Abiding by the stay, Plaintiffs asked Penn–Dixie to voluntarily turn over their customer lists. Upon being rebuffed, Plaintiffs, on September 2, 1980, initiated a proceeding in the Chapter 11 case and served upon the Court and the Debtor papers entitled, "Certain Creditors' Request for Relief from Automatic Stay to the Limited Extent of Requiring the Debtor to Produce Customer Lists." By a letter posted the following day, this Court informed Plaintiffs that the relief expressly requested must be brought on by a summons and complaint in an adversary proceeding, Rule 701 *et seq.* of the Rules of Bankruptcy Procedure, and *see, In re Willis*, 2 B.R. 643, 5 B.C.D. 1390 (W.D.Va.1980), but that since it appeared that Plaintiffs were not seeking relief from the automatic stay and were only moving for production of books and records in accordance with Rule 34 of the Federal Rules of Civil Procedure, the Court treated the papers as a motion for discovery. Plaintiffs were explicitly instructed that if they did desire relief from the automatic stay, to properly comply with the procedural requirements. On the basis of a "Motion to Expedite Hearing" accompanying Plaintiffs' papers, a return date of September 18, 1980 was placed on the calendar as requested. Compare, Bankruptcy Rule 906. No further action was taken by Plaintiffs.

As scheduled, oral argument was heard. Following argument, this Court ruled (and later embodied in an order dated September 24, 1980) that the discovery requested by Plaintiffs' Motion fell beyond the scope of discovery appropriate under Rules 114 and 205 of the Rules of Bankruptcy Procedure and must be denied.[2] Plaintiffs were advised, however, that if they desired, upon the filing of the requisite fee and satisfaction of other procedural niceties, their papers and requests would be treated as a *complaint* seeking relief from the automatic stay under § 362 to the limited extent of requiring the Debtor to produce its custom-

**2.** While the Bankruptcy Code and Rules of Bankruptcy Procedure provide for discovery of the debtor in certain instances, none of these provisions are applicable to the present situation. Bankruptcy Rule 114 allows for examination of a debtor on the issue of insolvency or inability to pay debts. Section 343 of the Bankruptcy Code, as expanded upon by its legislative history, House Report No. 95–595, 95th Cong., 1st Sess. (1977) 332; Senate Report No. 95–989, 95th Cong., 2d Sess. (1978) 43, U.S.Code Cong. & Admin.News 1978, p. 5787, provides for examination of the debtor to ascertain if assets have been improperly disposed of or concealed, or if there are grounds for objection to discharge. Neither is Rule 26 of the Federal Rules of Civil Procedure, which is incorporated by both Bankruptcy Rules 726 (in adversary proceedings) and 914 (in contested matters), applicable. First, no adversary proceeding was commenced to trigger Rule 726, and even if one had been triggered, or if Plaintiffs moved pursuant to Rule 914, a demand for customer lists would be beyond the scope of discovery where the issue is relief from the automatic stay of Section 362. *See, Weed v. Fleet Tire Mart*, 6 B.C.D. 606 (S.D.Iowa 1980).

er lists, and the Court would reconsider the matter on this basis. Plaintiffs accepted the invitation to travel this adversarial route. The Debtor thereafter responded with a motion to dismiss for failure to state a claim upon which relief can be granted. Bankruptcy Rule 712(b); Fed.R.Civ.P. 12(b)(6). We deal here with the Debtors' motion to dismiss.

With certain exceptions not relevant here [see, § 362(b)], under Section 362(a)(1) of the Bankruptcy Code, the filing of a petition under Chapter 11 operates as a stay of–

The commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

Section 362(d) sets forth the circumstances upon which the Court may grant relief from the automatic stay. In pertinent part, this section provides:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay–

(1) for cause,[3] . . .

Due to the general nature of the "cause" standard for obtaining relief from the stay, an examination of the legislative history of Section 362 to divine Congress' intent is warranted.

3. Plaintiffs are not claiming interests in any property of the Debtor, and therefore, usual questions of evaluation, equity, and adequate protection, do not arise here.

4. The legislative history also points to another basis for "cause", not put to issue by Plaintiffs' limited request.

Undoubtedly the court will lift the stay for proceedings before specialized or non-governmental tribunals to allow those proceedings to come to a conclusion. Any party desiring to enforce an order in such a proceeding would thereafter have to come before the bankruptcy court to collect assets.

The Congressional reports accompanying the statute provide an informative sample listing of factors and examples constituting "cause". In relevant part, the reports state:

. . . causes might include the lack of any connection with or interference with the pending bankruptcy case. For example, a divorce or child custody proceeding involving the debtor may bear no relation to the bankruptcy case. In that case, it should not be stayed. A probate proceeding in which the debtor is an executor or administrator of another's estate usually will not be related to the bankruptcy case, and should not be stayed. Generally, proceedings in which the debtor is a fiduciary, or involving post–petition activities of the debtor, need not be stayed because they bear no relationship to the purpose of the automatic stay, which is debtor protection from his creditors. The facts of each request will determine whether relief is appropriate under the circumstances.

House Report No. 95–595, 95th Cong., 1st Sess. (1977) 343–344; *Cf.* Senate Report No. 95–989, 95th Cong., 2d Sess. (1978) 52, U.S. Code Cong. & Admin.News 1978 at 6300.

■ *A fortiori*, an important key to determining whether to permit an action to proceed in another tribunal turns upon the issue of "connection with or interference with the pending bankruptcy case."[4] This is evidenced in the two examples set out, which do not provide illustrations of carte blanche authority to proceed. Both fact patterns in the examples are couched with

Nevertheless, it will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.
House Report No. 95–595, 95th Cong., 1st Sess. (1977) 341, U.S.Code Cong. & Admin.News 1978 at 6297.
This is in harmony with 28 U.S.C. § 1471(d), which allows the Bankruptcy Court to abstain from a particular proceeding in a bankruptcy case, even though the Court has jurisdiction.

important limiting language, i. e.: "may bear no relation to the bankruptcy case"; "usually will not be related to the bankruptcy case". The purpose of the automatic stay is the protection of the debtor and his estate from his creditors, and thus it follows that if a proceeding is not connected with, or will not interfere with, the pending bankruptcy case, so as to not violate the purpose and policy of the automatic stay, "cause" exists to grant relief from the stay. The resolution of this question, the legislative history tells us, turns upon the particular facts of each request.

■ On both of the above two grounds, Plaintiffs' request for relief from the stay must be denied. Paring the facts to essentials, Plaintiffs are creditors of the Debtor, and designate themselves as such in their moving papers. They wish to proceed in a suit which would impact on property of the estate, (Section 541). Thus, the action is connected with the pending bankruptcy case. In neither of the two examples presented in the legislative history by Congress to guide the Court, (where "cause" was found and the lifting of the stay recommended), do we have creditors seeking to move against the debtor's estate.[5]

The granting of Plaintiffs' requested relief would also interfere with the pending bankruptcy case. As pointed out earlier, Plaintiffs' requested relief from the automatic stay does not ask for permission to proceed in full with their antitrust suit. What they seek is specific production of lists to aid discovery in litigation outside this Court that is already stayed. Nowhere does the Bankruptcy Code or Rules of Bankruptcy Procedure provide for this, and to require the Debtor to comply with the request will necessitate a deviation from the Debtor's duties and responsibilities in this reorganization, (not to mention the costs of compliance). That consideration cannot be shrugged off as *de minimis*. Interference by creditors in the administration of the estate, no matter how small,

through the continuance of a preliminary skirmish in a suit outside the Bankruptcy Court is prohibited. In short, the Debtor should not be required to devote energy to this collateral matter at this juncture. As explained by the Congressional Reports:

The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

House Report No. 95–595, 95th Cong., 1st Sess. (1977) 340; Senate Report No. 95–989, 95th Cong., 2d Sess. (1978) 54, U.S.Code Cong. & Admin.News 1978 at 5840.

Additionally, the Debtor has alleged, without substantial contradiction (both at the time when Plaintiffs made their original discovery request and now again), that production of the customer lists is burdensome. Further, the Debtor points out that it no longer has access to many customer lists now held by entities it previously owned as subsidiaries during the 1968–1976 period. Finally, if a partial lifting of the stay is granted, Penn–Dixie claims that it will be forced to defend and raise its previous objections against the discovery order in the Arizona District Court. All of this points to a conclusion that granting Plaintiffs' requested relief would result in a not insubstantial expenditure from the Debtor's estate of energy and money away from the Chapter 11 reorganization effort.

In, *In re Cloud Nine, Ltd.*, 5 B.C.D. 1377, 3 B.R. 199 (D.N.M.1980), Plaintiffs also sought relief from the automatic stay of Section 362 to continue a suit in a court outside the Bankruptcy Court. In denying the request to lift the stay, the Bankruptcy Court noted:

Relief from the stay, if granted, ... will result in at best only a partial resolution

5. A divorce terminates a marriage. Child custody proceedings determine which parent the child will live with. A probate proceeding in which the debtor is the executor or administrator of another's estate likewise does not concern or effect the debtor's estate.

of the issues and at worst will complicate issues and result in needless litigation. *Id.* at 1378.

Likewise here, granting Plaintiffs' request would not be a final, or even penultimate, step towards the resolution of Plaintiffs' claim. Plaintiffs' instant thrust is but a preludial tussle between the parties that is impermissable. This Court will not allow Plaintiffs to chip away piecemeal at the Debtor's automatic stay protection. As argued by counsel for the Plaintiffs:

> Your Honor, whether we would come back for a lift of the stay in toto or back for requesting a lift of the stay in some limited purpose is not something that we made any decision with regard to.

Transcript at 22.

Finally, there has been no demonstration by Plaintiffs of any real injury whatsoever that would result from a denial of the relief sought. See, *In re Adams & Westlake Co.,* 4 B.C.D. 225 (N.D.Ind.1977) (case under Bankruptcy Rule 11–44; *Cf.* Section 247 of the Bankruptcy Reform Act of 1978). Plaintiffs admit that their only purpose in seeking the requested relief is their desire to satisfy the Arizona District Court that they have used reasonable effort to identify each putative class member. In this regard, Plaintiffs must demonstrate to the Arizona District Court that they have taken all reasonable steps to compile a "master list". The failure to obtain customer lists from Penn–Dixie would not frustrate Plaintiffs' massive litigation. Concededly, Plaintiffs can meet the Rule 23 of the Federal Rules of Civil Procedure notice requirement through notice in trade publications and the Wall Street Journal.

Having failed to show "cause", as required by Section 362(d)(1) of the Bankruptcy Code, Plaintiffs have also failed to state a claim upon which relief can be granted. Accordingly, the Defendants' motion to dismiss the complaint is granted.

The stay shall remain and be in full force and effect by virtue of Section 362 and Section 105 of the Bankruptcy Code.

It is so ordered.