**In re PIED PIPER CASUALS, INC., Debtor.**

**Robert M. FISHER, as Trustee of Pied Piper Casuals, Inc., Plaintiff,**

v.

**The INSURANCE COMPANY OF the STATE OF PENNSYLVANIA, Defendant.**

Bankruptcy No. 84 B 10290.

Adv. No. 84–6206A.

United States Bankruptcy Court, S.D. New York.

June 13, 1985.

Otterbourg, Steindler, Houston & Rosen, P.C. by Richard J. Rubin, New York City, for plaintiff.

Greenhill, Speyer & Thurm by Robert M. Silverstein, New York City, for defendant.

OPINION AND ORDER

HOWARD C. BUSCHMAN, III, Bankruptcy Judge.

This case raises the issue of whether an action by a trustee upon an insurance policy seeking reimbursement for losses due to theft is a core proceeding under 28 U.S.C. § 157(b) (1984).

I

Pied Piper Casuals, Inc. ("Debtor" or "Pied Piper") was a manufacturer of ladies apparel. The defendant, Insurance Company of the State of Pennsylvania ("I.C.S.P."), issued Pied Piper an insurance policy covering losses due to theft and other non-excluded causes during the policy period, October 7, 1983 to October 7, 1984. Similar policies had been issued for two prior annual periods.

According to the complaint, Pied Piper, in January 1984, first discovered losses due to thefts commencing in April 1982 and continuing thereafter. It claims to have given written notice to defendant's agent on the date of discovery of the theft, and once I.C.S.P.'s agent was thus informed, he asserted that the full extent of the loss could not be determined until completion of a police investigation.

Shortly thereafter, on February 29, 1984, Pied Piper filed a voluntary petition seeking reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (1984) (the "Code"). The case was subsequently converted to Chapter 7, *see In re Pied Piper Casuals, Inc.*, 40 B.R. 723 (Bankr.S.D.N.Y.1984), and Robert Fisher named Trustee.

It is further alleged that the Trustee, through counsel, notified the insurance

company's adjuster on June 18, 1984 that the police investigation had revealed thefts. Upon being contacted by an accounting firm seeking to examine Pied Piper's books and records, the Trustee requested proof of authority to act for the insurance company or adjuster. None was furnished. The Trustee claims an insured loss of $1,407,208 during the time in which the current policy and its predecessor policies were in full force and effect.

In answering the complaint, I.C.S.P. asserted, *inter alia,* a defense based on a provision of the policy requiring action on the policy within 12 months of the loss and the filing of a written proof of loss within 60 days of discovery. Other defenses based on exclusions from coverage are also asserted.

Prior to filing its answer, the I.C.S.P. served a motion seeking an order of this Court to remove the proceeding to the district court. At the hearing, the provisions of 28 U.S.C. § 157(d) were called to the attention of counsel. That section requires that a motion to withdraw a reference be made in the district court. The motion was therefore dismissed. Upon the insurance company's subsequent motion, the district court, per Judge Sweet, denied the motion as premature since the parties had not sought the determination of this Court as to whether the matter was a core proceeding. *See Fisher v. Insurance Company of the State of Pennsylvania,* 48 B.R. 294, 12 B.C.D. 1047, (CCH) Bankr.L.Rep. [1984–1985 Trans Binder] ¶ 70,324 (S.D.N.Y.1985) Hence, I.C.S.P. moved before this court for an order determining the nature of this proceeding under § 28 U.S.C. § 157. It asserts that the proceeding is a related proceeding as to which this court is to recommend to the district court findings of fact and conclusions of law. The Trustee, conversely, asserts that the proceeding is a core proceeding to be heard and determined here.

## II

As adjunct to the district court, bankruptcy courts can "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1). The provisions regarding non-core proceedings are different. Unless the parties consent, a bankruptcy judge cannot enter final orders in a non-core proceeding, but must instead submit "proposed findings of fact and conclusions of law to the district court," who may then review *"de novo* those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

Tailored to limit the bankruptcy's court's power under the Bankruptcy Act of 1978, 11 U.S.C. § 101 *et seq.* (1984) (the "Code"), to fit within the Supreme Court's plurality decision in *Northern Pipeline Const. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed. 598 (1982), the term core proceeding is to be interpreted in light of fifteen types of core proceedings set forth in 28 U.S.C. § 157(b). That list, however, is exemplary only and does not limit the cases which fall thereunder.

Here, the Trustee's cause of action is for collection of the proceeds of an insurance policy. The company defends with an argument that the coverage does not extend to the particular theft, and that no proof of loss statement as such has been filed. The proceeding, accordingly, appears to be a proceeding seeking an order to turn over property of the estate. Such a proceeding is denominated as a core proceeding in § 157(b)(2)(E).

A turnover proceeding is defined by Section 542(b) of the Code to include an action based on "a debt that is property of the estate and that is matured, payable on demand, or payable on order." "[A]n examination of the legislative history compels a broad view of § 542's turnover power." *In re Sunrise Equipment and Development Corp.,* 24 B.R. 26, 27 (Bankr.D.Ariz.1982).

An insurance policy is property of the estate under § 541 of the Code. *Wedgeworth v. Fibreboard Corp.,* 706 F.2d 541, 10 B.C.D. 1272 (5th Cir.1983); *In re Moskowitz,* 13 B.R. 357, 7 B.C.D. 1314

(Bankr.S.D.N.Y.1981) *appeal denied* 14 B.R. 307 (S.D.N.Y.1981); *In re Pearl-Wick Corp.*, 15 B.R. 143 (Bankr.S.D.N.Y.1981) *aff'd* 26 B.R. 604 (S.D.N.Y.1982). The derivative proceeds are also property of the estate. *Bradt v. Woodlawn Auto Workers F.C.U.*, 757 F.2d 512 (2d Cir.1985); *In re Mego Intern. Inc.*, 28 B.R. 324, 10 B.C.D. 424 (Bankr.S.D.N.Y.1983). Accordingly, it has been held that such proceeds are subject to the turnover provisions of § 542 once the insurance company has recognized its duty to pay. *In re Mills*, 37 B.R. 832, 833 (Bankr.E.D.Tenn.1984). Here, the issue is whether a proceeding seeking insurance proceeds is a core proceeding where the insurer contests coverage and asserts that the notice condition to the policy has not been met.

■ With respect to an insurer's obligation to pay insurance proceeds, the debt is matured upon the occurrence of the loss. *Cerullo v. Aetna Casualty & Surety Co.*, 41 A.D.2d 1, 3, 341 N.Y.S.2d 767, 769, (4th Dep't 1973); *Beck-Brown Realty Co. v. Liberty Bell Ins. Co.*, 137 Misc. 263, 264, 241 N.Y.S. 727, 728 (1930). Although the obligation to pay is conditioned upon timely provision of a written proof of loss, 5A Appleman, *Insurance Law and Practice* § 3481 (1981) such a condition is akin to the demand and presentment conditions applicable to causes of action based on negotiable instruments, *see* N.Y. Uniform Commercial Code § 3–501 (McKinney's 1984) which clearly falls within the definition of turnover proceedings. *Cf. In re Welch*, 29 B.R. 819 (Bankr.M.D.Tenn.1982).

Once a sworn proof of loss statement is submitted, the insurance company can assert, as it has done here, a defense of non-coverage. Such a defense, however, like forgery and other defenses to a check, *see* N.Y. Uniform Commercial Code § 3–401 (McKinney's 1984) does not affect the demand character of the debt. *Cf. Kronfeld v. Fidelity*, 53 A.D.2d 190, 385 N.Y. S.2d 552, 555, 194 (1st Dep't, 1976); *appeal denied*, 40 N.Y.2d 807, 391 N.Y.S.2d 1025, 359 N.E.2d 1002 (1976); 5A Appleman, *Insurance Law and Practice* § 3462 (1981).

Thus, an action on an insurance policy either is, or bears a strong similarity to, a turnover proceeding which Congress has expressly included in its open-ended definition of core proceedings.

### III

Even were an action to recover insurance proceeds not to be strictly construed as a turnover proceeding, there is a significant nexus between such proceedings and bankruptcy considerations which, in light of the similarity, strongly justifies treatment of such actions as core proceedings. In light of the plurality decision in *Marathon*, the vesting of original jurisdiction in the district courts through the amendment to 28 U.S.C. § 1334 by P.L. 98–353 (1984) and the control by district courts over cases and proceedings referred to the bankruptcy courts

> [t]he issue of constitutional constraint on the ability of an adjunct bankruptcy court to issue final orders ... requires consideration of the nexus between the purposes sought to be achieved through exercise of Article I power and the matter over which the court is asked to act.

*In re Lion Capital Group*, 46 B.R. 850, 12 B.C.D. 840, 844, 12 C.B.C.2d 59 (Bankr.S.D. N.Y.1985).

Recovery on insurance policies that nearly all debtors possess when entering bankruptcy are generally essential to achievement of the overall purposes of the bankruptcy court system and the Code: quick and equitable marshalling of the estate's assets, speedy liquidation and payment of creditors' claims or rehabilitating the debtor. Claims which can be quickly adjudicated and are not fraught with the potentially aggravated litigation of the fraud, contract and warrant claims presented in *Marathon* can be more speedily resolved by the bankruptcy court. *Lion Capital*, 46 B.R. at 860, 12 B.C.D. at 846, 12 C.D.B.2d at 69–70. The bankruptcy court's Article I purpose is to get the creditors paid and move the debtor quickly through liquidation or reorganization. *In re Grayson-Robinson Stores, Inc.*, 320 F.2d 940, 949

(2nd Cir.1963). Collection of insurance proceeds like that of other matured debts which Congress intended the bankruptcy courts to hear and determine under § 157(b). An action on such collection should not be shunted off to crowded district court and state court calendars thereby frustrating these ends.

To this, defendant I.C.S.P. responds that an action under this policy should not be a core proceeding because the policy requires submission of a dispute as to the amount of recovery to arbitration. That argument, however, supports a determination to the contrary. *Marathon* is bottomed on the concern for delegation of justiciability to a Article I court. *E.g., White Motor Corp. v. Citibank, N.A.,* 704 F.2d 254, 263–64, 10 B.C.D. 392, 401 (6th Cir.1983). P.L. 98–353 (July 10, 1984), in amending 28 U.S.C. § 1334 and in enacting 28 U.S.C. § 157 addressed and solved that concern in its vesting of original jurisdiction over bankruptcy proceedings in the district courts and granting to them considerable control of all matters referred to the bankruptcy courts. *Lion Capital,* 46 B.R. at 858, 859, 12 B.C.D. at 845, 12 C.B.C.2d at 67–69.

Where the parties have agreed to arbitration, there is even less concern over wholesale delegation of justiciability to an Article I court. Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (1982) an arbitration award will stand unless procured by "undue means" or where there was prejudicial misbehavior or the arbitrators "exceeded their powers." 9 U.S.C. § 10. It could be corrected only where there was evident material miscalculation. This power is hardly a broad exercise of justiciability. Review of such awards is to be indulged only in the most extreme cases; the court's function in confirming or vacating an award is "severely restricted." *Oinoussian S.S. Corp. of Panama v. Sabre Shipping Corp.,* 224 F.Supp. 807, 809 (N.Y., 1963). The Second Circuit has "consistently accorded the narrowest of reading to the Arbitration Act's authorization to vacate awards where the arbitrators exceeded their powers." *Puerto Rico Mari-*

*time Shipping Authority v. Star Lines, Ltd.,* 496 F.Supp. 14, 15 (S.D.N.Y.1979). There is thus no such concern here. This adversary proceeding is a core proceeding under § 157(b).

IT IS SO ORDERED.